■ In the Matter of EMPIRE MUTUAL INSURANCE COMPANY, Respondent, v PHILIP SASH et al., Respondents, and CRITERION INSURANCE COMPANY, Appellant.—In a proceeding to stay arbitration sought by respondents Philip Sash and Felix Pierre upon a claim on the uninsured motorist endorsement of respondent Sash's automobile insurance policy, in which proceeding appellant, Criterion Insurance Company, the insurer of the motor vehicle involved in the accident with the above-mentioned individual respondents, was added as a party, the appeal is from an order of the Supreme Court, Kings County, dated May 19, 1975, which, after a nonjury trial, *inter alia,* (1) permanently stayed arbitration and (2) ordered appellant to defend its insured in any action arising out of the accident. By order dated June 1, 1976 this court remanded the proceeding to Special Term for determination "of whether the owner of the vehicle denies receipt of Criterion's notice of cancellation", and the appeal was held in abeyance in the interim *(Matter of Empire Mut. Ins. Co. v Sash,* 53 AD2d 614). The hearing has been held and the findings have been received. Order reversed, on the law and the facts, without costs or disbursements; motion to stay arbitration denied, and it is declared that Criterion Insurance Company is not obligated to defend Isabel Thomas, or to pay any judgment that may be obtained against her in the action against her instituted by Philip Sash and Felix Pierre. The decision of this court to remand to determine whether the owner of the vehicle denied receipt of the insurer's notice of cancellation (see *Manning v Boston Old Colony Ins. Co.,* 48 AD2d 838; cf. *Capra v Lumbermens Mut. Cas. Co.,* 43 AD2d 986) necessarily required evaluation of the credibility of her denial. On the entirety of the evidence, we conclude that the insured's denial of receipt is meaningless on the basis of her own testimony. In answer to a question as to whether she had received her mail

regularly, she testified: "A. Yes, but my name was Coles. After I had the car, the car was registered under Thomas and my name changed to Coles, because I was no longer married. In the meantime, there was a lot of vandalism in that building. The mail boxes were broken into often. I found my mail on the floor when I came in. Sometimes I didn't get it. Sometimes a neighbor got it for me, because I worked." Also: "My mail was [at times] on the floor. I got it indirectly, but who knows whether something else was in that mail that I never received." Thus, *giving complete credibility to her testimony*, it may not be doubted that the notice of cancellation could still have been delivered to her, as she herself admitted that "who knows whether something else was in that mail that I never received." We particularly note also the following: (1) the alleged cancellation was for nonpayment of the premium for the assigned risk policy for any period following the first year of a three-year assigned risk policy; the first year expired on July 11, 1973; nevertheless the insured had not renewed her automobile registration upon its expiration on the preceding June 30; (2) her stated reason for such nonrenewal was that the vehicle "was in the process of being sold and it wasn't supposed to have been driven at the time of the accident [on August 23, 1973]'; (3) her stated reason for selling was "because of financial difficulty in keeping up payment"; (4) there had been received by the insured an earlier notice of cancellation for nonpayment dated February 28, 1973, which had been followed by a payment reinstating the policy on March 15, 1973; (5) there had been received a further notice of cancellation for nonpayment, dated April 26, 1973, which had been followed by a payment reinstating the policy; (6) she explained that "our friends that had the keys didn't know that [the car wasn't supposed to have been driven], and they had taken the car to take their son to the hospital", in the course of which the accident occurred. Since, admittedly, the insured had not intended to operate the vehicle, and retained it only for the purpose of sale (going so far as refusing to pay the cost of renewal of registration) it is extremely unlikely, given her financial problems and history of dealings with her insurance company, that she would have paid any installments of insurance for the period beyond July 11, 1973. A commonsense appraisal of the evidence demonstrates that she would have ignored any notice of cancellation as to such period. Martuscello, Latham and Shapiro, JJ., concur; Gulotta, P. J., and Hopkins, J., dissent and vote to affirm the order, with the following memorandum: In a determination in effect affirmed by the majority herein, Special Term found as a fact that the assured, Isabel Thomas, never received notice of cancellation of her assigned risk policy. Under these circumstances it becomes incumbent upon her insurer, Criterion,, to establish that notice of cancellation had, in fact, been mailed to its assured, so as to invoke the presumption of delivery and thereby establish an effective cancellation of its policy (see *Nagel v State Farm Mut. Auto Ins. Co.,* 51 AD2d 1022; *Caprino v Nationwide Mut. Ins. Co.,* 34 AD2d 522). Insofar as the proof of mailing is concerned, the facts at bar are virtually indistinguishable from those in *Manning v Boston Old Colony Ins. Co.* (48 AD2d 838), wherein we determined that the insurer's proof of mailing was legally insufficient to invoke that presumption. On the strength of *Manning,* we believe that the proof in the instant case is likewise insufficient, and that a valid cancellation of the assigned risk policy has not been established (see *Capra v Lumbermens Mut. Cas. Co.,* 43 AD2d 986; *Caprino v Nationwide Mut. Ins. Co., supra).*